IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Criminal Case No. CCB-17-380 |
| | * | Civil Action No. CCB-21-1204 |
| SHANNON L. STAFFORD | * | |
| | * | |
| | *** | |

**MEMORANDUM**

Shannon L. Stafford has filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255 (ECF 127; ECF 146). He raises two grounds as bases for relief, both of which allege ineffective assistance of counsel. For the reasons explained below, Mr. Stafford's motion is without merit and will be denied.

As reflected in the trial transcripts (ECFs 113,116-119, Trial Tr.) and summarized in the government's sentencing memorandum, from January 5, 2004, to August 6, 2015, Mr. Stafford was employed at Constituency Management Group (CMG) as an employee in the information technology (IT) department. (ECF 95 at 2, Govt. Sent. Memo). Although he was based primarily in the Washington D.C. office, he provided IT technical support and assistance to CMG employees in the Washington, D.C., McLean, Virginia, and Baltimore, Maryland offices. (*Id*.). As part of his regular duties at CMG, Mr. Stafford had access to the system login credentials of other employees and was authorized to use those credentials while carrying out his technical support duties. (*Id*.). He was also provided with a company laptop. (*Id*.). On August 6, 2015, the defendant was fired by CMG, due to continued performance issues, and he failed to return the company laptop provided to him, in violation of company policy. (*Id*.). That evening, while using his company provided laptop, Mr. Stafford unsuccessfully attempted to access CMG's network without authorization approximately 10 times from his residence in Crofton, Maryland. (ECF 95 at 3). Two days later

on August 8th, Mr. Stafford successfully accessed CMG's network using another employee's credentials, and deleted all six Storage Area Network file storage drives used by CMG's Washington, D.C. office. (*Id.*). This caused severe disruption and led to the loss of some customer and user data. (*Id.*). After deleting the stored files, Mr. Stafford changed the password to access the file storage management system, hindering the company's efforts to determine what happened and restore access to its remaining files. (*Id.*).

On August 11th, Mr. Stafford once again unsuccessfully attempted to remotely access CMG's computer network approximately 13 times from his home. (*Id.* at 4). On August 13th, CMG representatives demanded that the defendant cease and desist his unlawful access of the company's systems. (ECF 95 at 4). The defendant, however, continued his efforts and on August 21st and September 9th he attempted to access the company's computer network from his home approximately 17 times, using credentials that were not his. (*Id.*). On September 14th, using the credentials of another CMG employee, Mr. Stafford once again gained access to the network from his home. (*Id.*). During this unauthorized access, he attempted to connect to a network file storage system computer in the IT department of CMG's Baltimore office, with the intent to cause the same type of damage he achieved when he deleted the Washington D.C.'s office stored files. (*Id.*).

On July 18, 2017, Shannon Stafford was indicted on one count of intentional damage to a protected computer on or about August 8, 2015, and one count of attempted intentional damage to a protected computer between August 8, 2015, and September 14, 2015, in violation of 18 U.S.C. §§ 1030(a)(5)(A), (b) and (c)(4)(B). (ECF 1, Indictment). The court appointed the Federal Public Defender's Office to represent Mr. Stafford, (ECF 8, Order Appointing Federal Public Defender), subject to a contribution order. (ECF 9, Contribution Order). On November 2, 2018, following an evidentiary hearing, the court granted a motion to suppress Mr. Stafford's incriminating statements

to law enforcement agents on the basis of a Miranda violation, not on voluntariness. (ECF 46 at 36-39, Mot. Hearing Tr.). Apparently due to a breakdown in the attorney-client relationship, Mr. Stafford retained attorney John O. Iweanoge, II as new counsel; Mr. Iweanoge entered his appearance on May 14, 2019, (ECF 59, Notice of Att'y Appearance), and obtained a continuation of the trial date (ECF 62, Mot. for Continuance or Trial Date; ECF 63, Order Setting Trial Date). A jury trial was held from November 12, 2019, to November 15, 2019, and a verdict of guilty was returned on both counts. (ECFs 75-78, Jury Trial; ECF 86, Jury Verdict). Mr. Stafford's sentencing proceeding was delayed due to the COVID-19 pandemic; ultimately, he was sentenced on September 24, 2020, to a term of one year and one day incarceration. (ECF 101, Sentencing; ECF 102, Judgment). A timely notice of appeal to the Fourth Circuit was filed on October 7, 2020, but was dismissed on February 8, 2021. (ECF 107, Notice of Appeal; ECF 120, USCA Order). The instant motion to Vacate under 28 U.S.C. § 2255 was filed on May 17, 2021. (ECF 127, Mot. to Vacate).

Pursuant to Title 28 U.S.C. § 2255, the defendant asserts two grounds, both of which allege ineffective assistance of counsel. Under ground one, Mr. Stafford asserts that his Counsel, attorney Iweanoge, failed to interview or present eyewitnesses who would have testified to his whereabouts which is also corroborated by timestamped, geotagged data of multiple devices. He suggests that if the jury had been made aware of the existence of cell-phone data and eyewitnesses, the verdict would have been different. The government counters that Mr. Stafford's physical location was not a condition to accessing the virtual private network (VPN), and that this line of defense surely would have opened the door to revisit the admissibility of his admissions to the FBI, which were suppressed on *Miranda* warnings defects, not voluntariness. In his affidavit, attorney Iweanoge maintains that there were no witnesses who could have provided an alibi

defense or otherwise, and that physical location in this instance was less significant than a digital forensic fingerprint which showed internet traffic, a VPN being accessed, and other facts implicating Mr. Stafford in the crime. Furthermore, attorney Iweanoge, in concurrence with the government, points out that he recognized the possibility that Mr. Stafford's incriminating statements, despite being suppressed, could be admissible for impeachment purposes if the court ruled that they were given voluntarily.

Under ground two, Mr. Stafford asserts that his counsel tasked him with conducting his own investigation and sent him home with the government's hard drive of discovery to do his own research, instead of hiring an expert. Additionally, Mr. Stafford argues that his counsel made no effort to inform the jury about where he was located at the time CMG's network was accessed. He maintains that he was located 100 miles away from the location where the network was accessed. The government counters that Mr. Stafford's counsel presented a very spirited and aggressive defense, notwithstanding the evidence and constraints with which counsel was working. According to the government, Stafford's dissatisfaction with the results is not a product of ineffective assistance of counsel. In his affidavit, attorney Iweanoge, explains that when he was first hired as counsel, he continued to use the experts retained by Mr. Stafford's previous counsel. But upon further consideration, he ultimately concluded that expert testimony in this case would have been unfavorable to Mr. Stafford's defense. Moreover, attorney Iweanoge affirms that the defendant, being a technology expert, was in a better position than most to assess what if anything might be attacked by the government and that Mr. Stafford's admissions to law enforcement significantly constrained the strategy and tactics of counsel.

To sustain a claim for ineffective assistance, a petitioner must satisfy the two-prong test set forth by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). First, the

petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. Specifically, the petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. In evaluating such conduct there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To satisfy the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A court reviewing an ineffective assistance claim need not consider the prongs in order or even address both components of the inquiry, if the defendant makes an insufficient showing on one of the two prongs. *Id*. at 2069.

With respect to Mr. Stafford's first claim that attorney Iweanoge's representation was deficient because counsel failed to interview or present eyewitnesses, "*Strickland's* objective reasonableness prong requires counsel to conduct appropriate factual and legal inquiries and to allow adequate time for trial preparation and development of defense strategies." *Huffington v. Nuth,* 140 F.3d 572, 580 (4th Cir.1998). The Fourth Circuit has held that representation may be deficient where counsel fails to contact and interview witnesses who are readily available or whom the defendant has identified. *Id*. However, while failing to investigate a crucial witness may suggest an inadequate investigation, "fail[ing] to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." *Id*. In this case, Mr. Stafford has failed to identify or provide detail about any eyewitnesses he believes could have testified on his behalf. In fact, attorney Iweanoge asserts in his affidavit that there were "no witnesses who could have provided an alibi defense or otherwise." (ECF 143-1 at 2, Affidavit).  Where the record

and the defendant do not identify any witnesses, and particularly any crucial witnesses, the court cannot find ineffective assistance on the part of attorney Iweanoge.

Mr. Stafford also complains about attorney Iweanoge's decision declining to introduce cell-phone data during the trial. However, it is not clear to the court how the introduction of this data would have benefited Mr. Stafford, much less that there is a reasonable probability that its production would have affected the outcome of the proceedings. First, as attorney Iweanoge stated in his affidavit, "a digital forensic fingerprint . . . implicated Mr. Stafford in the crime." (Affidavit at 2-3). This digital forensic fingerprint provided strong evidence against Mr. Stafford and revealed countless instances in which his unreturned company computer accessed CMG's network and files from his home in Crofton. *See Good v. United States*, No. 2:16CR22, 2018 WL 2976984 at *5 (E.D. Va. June 12, 2018) (finding that in light of overwhelming evidence against Petitioner, counsel's performance, even if deficient, did not cause any prejudice as Petitioner failed to show a reasonable probability that the result of the proceeding would have been different). Second, the government put on a strong case which was reinforced by the testimony of numerous witnesses, including expert witnesses and federal agents, who further inculpated Mr. Stafford in the hacking and disrupting of CMG's network and systems. *See id*. (noting that the government's case was bolstered by the testimony of numerous witnesses, co-conspirators, and federal agents).

Third, this was a reasonable strategic decision on the part of attorney Iweanoge who determined that the digital forensic fingerprint in this case outweighed the potential significance of Mr. Stafford's physical location. *See Rose v. Lee*, 252 F.3d 676, 693 (4th Cir. 2001). Ultimately, "when counsel makes a reasonable strategic choice based upon an investigation of the facts, [courts] must defer to that strategic choice." *Id*. Finally, the risk of letting in Mr. Stafford's incriminating statements made to law enforcement was particularly relevant. Attorney Iweanoge

aptly recognized that Mr. Stafford's admissions, despite being suppressed because of Miranda violations, could be admissible for impeachment purposes, and considering the circumstances, he made a reasonable strategic decision not to introduce cell-phone data. *See Mincey v. Arizona*, 437 U.S. 385, 397-398 (1978) (holding that "[s]tatements made by a defendant in circumstances violating the strictures of *Miranda v. Arizona, supra*, are admissible for impeachment if their "trustworthiness . . . satisfies legal standards." But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law.") Considering the overwhelming evidence against Mr. Stafford from the digital forensic fingerprint and witness testimony, the lack of significance of physical location, and the risk of letting in the admissions, Mr. Stafford has failed to establish how the introduction of cell-phone data would have changed the outcome of his case. Thus, the court finds that attorney Iweanoge was not deficient in declining to produce witnesses and cell-phone data and accordingly, the first claim will be denied.

Under Mr. Stafford's second ineffective assistance of counsel claim, he alleges that attorney Iweanoge was ineffective for tasking him, the client, with conducting his own research instead of hiring an expert. However, the decision about which witnesses to call is a tactical choice normally entrusted to counsel. *See Blythe v. United States*, No. CR JKB-14-591, 2023 WL 319815 at *3 (D. Md. Jan. 19, 2023); *see also United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010). As a result, it is "particularly difficult to overcome" Strickland's presumption of reasonableness for a claim alleging ineffective assistance for failing to call an expert witness. *Blythe,* 2023 WL 319815 at *3. In this instance, upon determining that expert testimony potentially could have hurt Mr. Stafford's case, attorney Iweanoge made a tactical choice not to call any such witness.

Furthermore, attorney Iweanoge's overall performance in cross-examining exhibited capable advocacy, such that counsel was able to identify weaknesses in the government's case and attack the evidence presented. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) (holding that where counsel represented his client with vigor and conducted a skillful cross-examination, counsel was not deficient for not offering expert testimony). Specifically, during cross-examination, Attorney Iweanoge and his co-counsel elicited testimony from government witnesses conceding that someone other than Mr. Stafford could have accessed and used his company laptop without his knowledge, following his termination. (*See* ECF 116 at 137-138, Jury Trial Transcript Day One; ECF 117 at 107, Jury Trial Transcript Day Two). While it may have been inappropriate to task Mr. Stafford with sifting through discovery, this does not rise to the level of deficient performance where there is no indication that attorney Iweanoge did not also review the discovery and conduct appropriate research in anticipation of trial. Accordingly, Mr. Stafford's second claim will be denied.

In summary, Mr. Stafford has shown no grounds for relief. The motion to vacate will be denied, and no certificate of appealability will be issued. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.") (emphasis added); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (describing the "substantial showing" standard). A separate Order follows.

03/24/23
Date

/s/
Catherine C. Blake
United States District Judge

8